No. 22-15822

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————————

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,
*Appellant*,

V.

SHIRLEY N. WEBER, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE
STATE OF CALIFORNIA,
*Appellee*.

———————————————

## On Appeal from the United States District Court
## for the Eastern District of California
No. 21-cv-2168
Hon. John A. Mendez, District Judge

———————————————

## APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD, VOLUME 1 OF 1

———————————————

ROB BONTA
*Attorney General of California*
MICHAEL L. NEWMAN
*Senior Assistant Attorney General*
LAURA FAER
*Supervising Deputy Attorney General*
EDWARD NUGENT
DELBERT TRAN
*Deputy Attorneys General*
CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
(415) 229-0110
Delbert.Tran@doj.ca.gov
*Attorneys for Appellee*

November 3, 2022

*National Center for Public Policy Research v. Weber*

Appellee's Supplemental Excerpts of Record Table of Contents

| Document | ECF | Vol. | Page No. |
|---|---|---|---|
| **Volume 1 of 1** | | | SER 0001 |
| Transcript of Jan. 11, 2022 Motion to Dismiss Hearing, *Alliance for Fair Board Recruitment v. Weber*, No. 2:21-cv-1951-JAM-AC (Jan. 28, 2022) | 73 | 1 | SER 0003 |
| Notice of Intent to Stand on Complaint, *Alliance for Fair Board Recruitment v. Weber*, No. 2:21-cv-1951-JAM-AC (Jan. 27, 2022) | 72 | 1 | SER 0036 |
| Minutes for Motion to Dismiss Hearing, *Alliance for Fair Board Recruitment v. Weber*, No. 2:21-cv-1951-JAM-AC (Jan. 11, 2022) | 70 | 1 | SER 0038 |
| Order Denying Plaintiff's Motion for Preliminary Injunction, *Meland v. Weber*, No. 2:19-cv-2288-JAM-AC (Dec. 27, 2021) | 67 | 1 | SER 0040 |

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF CALIFORNIA
 2

 3    ALLIANCE FOR FAIR BOARD
      RECRUITMENT,
 4          Plaintiff,
                                    Sacramento, California
 5    vs.                           No. 2:21-cv-01951-JAM-AC
                                    Tuesday, January 11, 2022
 6    SHIRLEY N. WEBER,             1:31 p.m.
            Defendant.
 7    _____/

 8                    TRANSCRIPT OF PROCEEDINGS
                         MOTION TO DISMISS
 9        BEFORE THE HONORABLE JOHN A. MENDEZ, DISTRICT JUDGE
               (Proceedings held via videoconference.)
10                        ---oOo---

11
      APPEARANCES:
12
       For the Plaintiff:          BENBROOK LAW GROUP, PC
13                                 701 University Avenue,
                                   Suite 106
14                                 Sacramento, CA  95825
                                   By:  BRADLEY A. BENBROOK
15                                 Attorney at Law

16
                                   BOYDEN GRAY & ASSOCIATES
17                                 801 17th Street NW, Suite 350
                                   Washington, DC  20006
18                                 By:  JONATHAN A. BERRY
                                        MICHAEL BUSCHBACHER
19                                 Attorneys at Law

20
      (Appearances continued on following page)
21

22     Official Court Reporter:    Thresha Spencer,
                                   CSR, RPR
23                                 501 I Street
                                   Sacramento, CA 95814
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer-aided transcription
```

2

1                        APPEARANCES CONTINUED

2    For the Defendant:              CALIFORNIA DEPARTMENT OF
                                     JUSTICE
3                                    1515 Clay Street, Suite 2000
                                     Oakland, CA  94612
4                                    By:  JULIA HARUMI MASS
                                     Attorney at Law
5

6                                    OFFICE OF THE ATTORNEY GENERAL
                                     300 South Spring Street,
7                                    Suite 1702
                                     Los Angeles, CA  90013
8                                    By:  HEIDI JOYA
                                     Attorney at Law
9

10
                              ---o0o---
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    SACRAMENTO, CALIFORNIA, Tuesday, January 11, 2022, 1:31 p.m.

2                                --o0o--

3    (Proceedings were held via the Zoom application.)

4              THE CLERK:  Please come to order, court is now in

5    session.  The Honorable John A. Mendez, United States District

6    Court Judge, presiding.  Calling civil case 21-1951; Alliance

7    for Fair Board Recruitment versus Weber.

8              THE COURT:  All right.  Good afternoon.  If counsel

9    could state your appearances, beginning with the plaintiffs.

10             MR. BENBROOK:  Good afternoon, your Honor.  Brad

11   Benbrook for plaintiff.  I'm joined by and happy to introduce

12   you to my colleagues, Jonathan Berry and Michael Buschbacher.

13   They're on the line here, as I believe they coordinated with

14   your deputy.  Your Honor, Mr. Berry will talk about the equal

15   protection issues and Mr. Buschbacher will speak about the

16   internal affairs issues.

17             THE COURT:  Okay.  Thank you.

18             MS. MASS:  Good afternoon, your Honor.  I'm Julia

19   Harumi Mass.  I'm here on behalf of the California Secretary of

20   State, and with me on the line is Heidi Joya.

21             THE COURT:  Where is -- oh, there she is.  Okay.

22      All right.  Good afternoon to all of you.  Let's jump right

23   into it, this is a motion to dismiss.  This is a lawsuit --

24   this is the one that was filed in the Central District and was

25   sent up to me; is that right?  Yes, everybody is nodding, okay.

4

1    Four claims:  Count one involves SB 826, which this Court

2  is intimately familiar with.

3    Count two alleges AB 979, violates Fourteenth Amendment's

4  Equal Protection Clause.

5    Count three is that AB 979 violates Section 1981 by

6  requiring discrimination based on race and ethnicity.

7    And count four focuses on both SB 826 and AB 979 and the

8  internal affairs doctrine.

9    A quick question for the plaintiffs, it wasn't clear.  In

10  terms of your challenge, and these are all facial -- well,

11  that's the question.  Your challenge to AB 979's racial

12  classification, is that the only challenge that's being made to

13  AB 979 and not the LGBT portion of 979, Mr. Berry?

14       MR. BERRY:  Yes, your Honor, that's correct.  We are

15  not challenging the sexual orientation part.

16       THE COURT:  Okay.  I just want to make sure of that.

17  And then -- let me -- I want to go in reverse.

18    So, Mr. Buschbacher, I want to focus on the motion to

19  dismiss the internal affairs cause of action.  Let me say, just

20  generally, this is a motion to dismiss brought at a very early

21  stage of the lawsuit.  I don't know why I saw request for

22  judicial notice and evidentiary objections, and that's usually

23  what happens when I have good lawyers that just can't help

24  filing lots of paper.  But it is a motion to dismiss, folks, so

25  I look at the complaint, I look at the law.  Can the complaint

5

1  survive as a matter of law?  It's really that basic and that

2  simple.

3      Declaration requests for judicial notice, evidentiary

4  objections add nothing at a motion to dismiss stage, so I am

5  strongly discouraging you when you deal with other federal

6  district court judges to stop filing more paper.  Less is

7  better.  So let's focus on the complaint, let's focus on the

8  law.

9      And very simply put, Mr. Buschbacher, I didn't find a case

10  which allowed your clients to bring a claim under the internal

11  affairs doctrine as a standalone cause of action.  So that's my

12  main question to you is, are you aware of any binding case law

13  that recognizes this is a standalone claim?  You cited to

14  something out of Delaware, from what I recall, which is a

15  Delaware Supreme Court case, completely nonbinding,

16  non-persuasive, and did nothing for me.  So tell me why I

17  shouldn't just get rid of this claim and let's focus on the

18  real claims in this lawsuit.

19          MR. BUSCHBACHER:  Well, your Honor, first I'd say

20  this is a real claim, and it's an important one.

21          THE COURT:  Well, you and I will disagree, but go

22  ahead.

23          MR. BUSCHBACHER:  So the -- there is no binding case

24  law one way or the other on this.  There are cases that have

25  proceeded under the internal affairs doctrine.  For instance,

6

1    the *TLX* case, which we cite in our brief, which is a District

2    of Oklahoma case explicitly --

3              THE COURT:  Another persuasive District Court, but go

4    ahead.

5              MR. BUSCHBACHER:  Yes, your Honor.  So, like I said,

6    there is no binding case here that ties their hands one way or

7    the other.  I do think on the sort of very strong suggestions

8    of both the *Edgar* case, the Supreme Court case, that one of the

9    two Supreme Court cases that have gotten into this, and then

10   the *CTS* case.

11        Both of those cases are very strong suggestions that there

12   is, as *CTS* puts it, "Nothing more fundamental as a matter of

13   basic corporate law than this point that one state can't

14   intrude on the authority of other states to set the rules for

15   corporations that are incorporated under their law."

16        And it's really only following on those cases that

17   *McDermott* and *VantagePoint* are built.  They're not adding some

18   new or speculative thing, they just explicate what's already

19   being, like I said, very strongly suggested in *CTS* and *Edgar*.

20        And that point is that this fundamental notion of state

21   sovereignty which lets states be, in Justice Brandeis' terms,

22   "laboratories of democracy" requires a parody between states

23   when it comes to regulating matters that are their own, and

24   that's why the Dormant Commerce Clause, for instance, prohibits

25   interference from one state against another with respect to

1    interstate commerce.

2        And the internal affairs doctrine is one application of

3    that point.  And it also connects to this due process right

4    which is recognized in *McDermott* and in *VantagePoint* and has

5    been followed by every single Federal District Court that has

6    ever considered the issue, to my knowledge.  Certainly I

7    haven't seen anything in the briefing on the other side that

8    takes a different tack.

9        And those cases all say that there's a due process issue,

10   and it is pretty straightforward why.  You have a right to know

11   what law applies to you.  You have a fair notice right to know

12   what the law is.  And when one state muddies the water, as

13   California has done here by saying, "Well, you may have your

14   own rules, Delaware, or any other state, but we're going to

15   regulate that."

16       Then it is unclear to every shareholder of every company

17   covered by that law that's not incorporated under California

18   law and every director of those corporations what restrictions

19   actually apply to them.

20       And it's very straightforward to go into court with -- to

21   vindicate a due process violation, and we've done it.  In

22   paragraph 12 of our complaint we invoke 42 U.S.C. Section 1983,

23   and we connect that explicitly to our internal affairs claim.

24       Also, there is, just like with all --

25               THE COURT:  That's fine.  I don't have any problem

1  with you connecting the internal affairs doctrine with another

2  claim.  It's just that no court has ever gone down this path.

3  I give you major bonus points for creativity in trying to bring

4  what is, in effect, a law review argument into a case, but

5  you've got the wrong Court for convincing a judge to do that, I

6  have to tell you.  Very practical, very by the book.

7  Suggestions mean nothing to me, law means everything to me.

8  And while someone may have strongly suggested you can go down

9  this path, I'm not going to be the Court that's going to let

10 you go down this path.  It's just not my nature.

11      It's creative, I give you credit for that, but either the

12 Ninth Circuit has got to tell me this is okay or there's some

13 other District Court closer to me, including my own District

14 Court, tells me it's okay.  And I didn't see that case.

15      And it tends -- lawyers tend to get creative, and I

16 understand that, but it also creates issues for courts when

17 there are other causes of action that really are at the gist of

18 a lawsuit.  I don't like kitchen sink approaches, and I'm not

19 accusing you of that, but it tends to sort of seem like, "Let's

20 throw this one in too, and it's creative and let's see if we've

21 got a judge who might go along with it."

22      One, it's not necessary, two, no other court has ever seen

23 it.  And I understand your argument, I'm just not convinced

24 that there is any reason to keep it in as a matter of law.  So

25 those are my feelings.

9

1      And you answered my question, I appreciate it.  I'm just

2  going to let you know that I disagree.  And if I'm wrong, then

3  the Ninth Circuit can tell me I'm wrong and then you'll have a

4  Ninth Circuit opinion where you can bring this the next time

5  around.

6      All right.  So let me focus on SB 826, the cause of action

7  under SB 826.  I think all of you are or should be aware of the

8  order that I issued at the end of December denying a motion for

9  injunctive relief in *Meland* regarding SB 826.  My views

10  regarding SB 826 are really set forth in that order.

11      And so I also don't believe that this lawsuit can go

12  forward on a facial challenge to SB 826.  Whether you want to

13  challenge SB 826 on an as applied basis or not, I leave it up

14  to you.

15      The other interesting thing to me in general that I saw in

16  the briefs is little or no discussion about the scrutiny

17  standards.  And I saw sort of a throwaway line in the

18  plaintiff's brief that you think that SB 826 is subject to

19  strict scrutiny or heightened scrutiny, and I obviously

20  disagree with that.  But I don't think a facial challenge

21  can -- to SB 826, at least based on my prior ruling and my

22  reading of the case law involving this gender law, can go

23  forward.

24      I don't want to -- and I'll go into more detail, but just

25  so you know my initial reaction to that count.  My ruling would

1   be that I would grant the motion to dismiss without prejudice

2   to see if you really wanted to challenge SB 826 on different

3   grounds -- not on facial grounds -- but on an as applied basis.

4        So, Mr. Berry, I think you were going to argue SB 826.  Try

5   not to repeat anything that's in your brief that's already in

6   the record, I just want to get your reaction to my views on

7   that cause of action.

8             MR. BERRY:  Of course, your Honor.  I'm happy to do

9   it.  I think the -- I think the major difference I would want

10  to sketch out between the Court's decision on the *Meland*

11  preliminary injunction and where we are now is a matter of

12  posture.  So in the PI posture, of course, Mr. Meland had to

13  address kind of all of the elements of what he put forward as

14  the unconstitutionality of 826.  We are at a -- we're at a

15  different place.  We're on the Rule 12 posture, and what we're

16  dealing with right now is an issue that was not presented in

17  the litigation over the PI in the *Meland* case, which is this

18  facial as applied distinction.

19       I think the core theme I'd like to present to the Court on

20  this is that, okay, the governing standard from the Ninth

21  Circuit require, authorize, encourage discrimination on one of

22  these protective bases.  That's *Bras*, that's *Monterey*

23  *Mechanical*.  That goes to state action, not private compliance

24  strategies.  It is absolutely -- I agree completely that there

25  are going to be scenarios where an individual company may not

11

1    be needing to commit discrimination on the basis of race or sex

2    in order to comply with one of these laws, but the text of

3    Equal Protection Clause directs us to state action.

4        And in every case California is putting its thumb on the

5    scale in, you know, to use the facial standard language, it's

6    in all sets of circumstances, California is setting that up.

7            THE COURT:  Let me run this by the lawyers, and I

8    think it's at, again, the center of the case, the Ninth Circuit

9    is going to have to deal with it based on my *Meland* opinion if

10   they take up the order on the preliminary injunction.

11       You can see it in the order, and what I'm struggling with

12   is gender seems to be treated much differently than race, to

13   put it as simply as possible.

14       Look, we're at a motion to dismiss; I'm not ruling on the

15   merits or the lack thereof regarding 979.  But I think 979,

16   that there will be difficulties with 979 going down the road.

17   I'll say that without in any way being held to that statement,

18   further briefing, and the merits of this case.  This isn't a

19   merits decision.

20       But in preparing the *Meland* order, there was a difference

21   that I saw between the way courts have treated gender and the

22   way courts have treated race.  And I had that discussion with

23   the *Meland* lawyers telling them you tend to use the phrase race

24   or sex.  You use it in the same sentence, and the courts

25   haven't treated it this way.  And that was one of the

12

1    underlying bases as well for my *Meland* decision.

2        And that's what I think is the same issue with your facial

3    challenge to 826 is that:  That difference that the courts have

4    raised between gender and race.

5        And so I -- again, I think it's up to you as to whether you

6    want to change your strategy or bring a claim on an as applied

7    basis rather than a facial challenge.  Or whether you want to

8    stick to your facial challenge, I just don't think you've --

9    you've stated -- I don't think there is a basis in the law for

10   stating a facial challenge to 826.

11       I do think there is -- we'll get to it -- but I do think

12   there is clearly a basis for your counts two and three, your

13   challenge as to 979.  That wasn't a difficult issue for me.  I

14   don't think the motion to dismiss succeeds at all on those two

15   counts, and I'm not going to spend a lot of time on counts two

16   and three.

17       Count one, honestly, I'm struggling with a little.

18            MR. BERRY:  Yes.

19            THE COURT:  But I tend to believe that it's not going

20   to survive a facial challenge, but you may decide to challenge

21   826 on different grounds.

22       So go ahead and respond to that, Mr. Berry.

23            MR. BERRY:  I appreciate that, your Honor.  So there

24   is -- there's an issue that our claims against 826 and 979 have

25   in common, and then they start to diverge a little bit down the

13

1   line analytically.

2       The threshold question, which is what we're dealing with

3   now, is simply is there discrimination?  Like, is there some

4   kind of state required/authorized/encouraged discrimination on

5   the basis of one of these protected bases?

6       And that goes -- that analytically applies whether we're

7   talking about race or we're talking about sex or some other

8   protected basis.

9       Downstream, later in the case for the claims, you know,

10  say, claims two and three, and I hope to say claim one, but

11  it's obviously up to the Court.  Downstream is when we start to

12  talk about, okay, say that there is discrimination, what's the

13  justification?  And that's where absolutely 100 percent the

14  doctrine has race and sex discrimination diverge.  And so you

15  have race discrimination goes under strict scrutiny, got to be

16  compelling state interest, narrow tailoring.  Sex

17  discrimination is heightened or exacting or intermediate

18  scrutiny with -- I don't have the verbiage just right -- but

19  important or substantial state interest, as your Honor laid out

20  in the *Meland* case.

21      At this threshold, though, we are dealing with them -- it's

22  the same threshold question, which is simply, is there

23  discrimination?  We would get to justification questions later

24  on in the litigation.

25              THE COURT:  You challenge the application of *Salerno*

14

1  in your briefs.  *Salerno* is the Supreme Court case that says,

2  "A facial challenge to a legislative act is, of course, the

3  most difficult challenge to mount successfully, since the

4  challenger must establish that no set of circumstances exists

5  under which the Act would be valid."

6      Also citing *Washington State Grange v. Washington State*

7  *Republican Party*, 2008 Supreme Court case, in which the Supreme

8  Court said that, under *Salerno*, "A plaintiff can only succeed

9  in a facial challenge by establishing that no set of

10  circumstances exists under which the Act would be valid, i.e.,

11  that the law is unconstitutional in all of its applications."

12      Given my *Meland* decision, I don't think you can show that

13  or you haven't alleged that -- well, you have alleged it, but

14  that you can meet the *Salerno* standard.

15      Now, you dispute the application of *Salerno*, you cite

16  *Citizens United v. FEC*.  I didn't find that to be very

17  persuasive at all.  And I do think in applying *Salerno* to

18  this -- to this law, to SB 826, I think that's why I think your

19  facial challenge, even as alleged, would fail.

20          MR. BERRY:  Your Honor, the way I would put it is

21  this turns on the question of application.  So let me say at

22  the outset, while we disagree as to the ultimate kind of

23  importance of the facial standard, I don't want to say that we

24  directly challenge whether *Salerno* governs.  I do think *Salerno*

25  governs as the standard that would apply to the extent this is

1    a facial challenge.

2        The issue here is application.  So *Salerno* says no set of

3    circumstances or it's unconstitutional in every application.

4              THE COURT:  Right.

5              MR. BERRY:  Right.  So the point of application, we

6    would point out, is California pronouncing, setting this

7    uniform standard.  That's the -- it tips the playing field in

8    every circumstance, and that's something that the Supreme Court

9    in the *Jacksonville* case has said itself, you know, plausible

10   injury and fact under the Fourteenth Amendment, the creation of

11   that unlevel playing field, which really it's the entire field.

12       It doesn't necessarily mean that in any particular case a

13   competitor, you know, going uphill against that tilted playing

14   field is going to lose out.  The point is Fourteenth Amendment

15   protects processes, not merely outcomes, and that's how you get

16   the Ninth Circuit saying "encourages" as well as "requires or

17   authorizes."

18             THE COURT:  But for your complaint to go forward on

19   the SB 826 challenge, you've got to allege that in all its

20   applications SB 826 is unconstitutional.  And I've already

21   found that it's not -- well, that the likelihood of success is

22   that it's not unconstitutional.  So why would I allow your

23   claim to go forward when I don't think it's plausible, at least

24   at this point, that 826 is unconstitutional in all its

25   applications?  That's where you're losing me.  I don't know how

16

1    I can be consistent between my *Meland* opinion and allowing this

2    to go forward on a facial challenge.  And I don't know how you

3    could amend -- I also don't know how you could amend it to try

4    to allege a facial challenge given what's required in terms of

5    unconstitutional in all its applications.

6            MR. BERRY:  And I think if the application -- your

7    Honor, what I would say to that is the Equal Protection Clause

8    is a restriction on state action.  It's not a restriction on

9    private corporation actions, and I've already indicated there

10   can absolutely be scenarios where private corporations, you

11   know, satisfy these numbers without thereby discriminating,

12   100 percent true.

13       But, you know, take hypothetically a law where in

14   California -- parallel universe California passes a law saying,

15   "There must be three white men on every board," or just to make

16   it more precise with 826, "There must be three men on every

17   corporate board, every public company board in the state."

18       Again, lots and lots of companies, I think as California's

19   findings indicate, would satisfy that without having to commit

20   any additional discrimination, and yet California would

21   absolutely be encouraging in that case discrimination on the

22   basis of sex.

23       We would need to get in, you know, further that litigation

24   would need to talk at a later stage this question of

25   justification, you know, is intermediate or heightened scrutiny

1    satisfied?  But the State of California has not put that

2    forward as a ground for their motion to dismiss.  They're

3    instead trying to direct attention to, "Okay, there are private

4    compliant strategies that can get there without discriminating,

5    but private compliant strategies is not where the Fourteenth

6    Amendment analysis goes, it's state action.  And in every case

7    California has tilted that playing field that -- which does

8    satisfy *Salerno's* facial standard, in our view.

9              THE COURT:  You still have to justify it.

10             MR. BERRY:  Yeah.

11             THE COURT:  This is an unfair question, and again,

12   you may not be prepared for it, but I ask it more out of

13   curiosity to both sides.  Well, I'll ask you first.

14       Apparently, someone in a trial in Los Angeles testified for

15   the State of California that this law now is merely

16   voluntarily -- requiring voluntary compliance.  It's a law

17   that's on the books, but corporations only have to voluntarily

18   comply with it.  They're not going to impose any punitive or

19   monetary penalties on corporations.  Interesting testimony.

20       Does that in any way impact your claim with respect to this

21   law or, again, I ask it more out of curiosity if you've

22   considered whether you really need to file a lawsuit against a

23   law that apparently is only -- corporations only subjected to

24   voluntarily comply with it.

25             MR. BERRY:  So I would say, your Honor, there's some

18

1    version of this issue that can come up anytime simply because

2    of prosecutorial discretion, you know, where the state can pass

3    a law and then the executive may never get around to enforcing

4    it.  It also creates some weird -- potentially some weird

5    mootness issues, but if -- look, if the State of California

6    wants to talk about a consent to create, happy to have that

7    conversation offline --

8              THE COURT:  Okay.

9              MR. BUSCHBACHER:  -- and then come back to you.

10             THE COURT:  Ms. Moss, I know you probably do not

11   disagree with my initial thoughts about counts one and four.

12   On the other hand, I did not find a lot of merit with respect

13   to the arguments that counts two and three need to be dismissed

14   based on the case law that I've reviewed or that -- I think

15   there was a standing argument also tossed in.  I think *Meland*

16   put to rest any standing arguments the state might raise and

17   told me that these plaintiffs clearly have standing.  So I'm

18   not going to spend any time on standing, but I'll give you an

19   opportunity to make any record you want with respect to counts

20   two and three.  I just think those clearly can go forward on a

21   facial challenge basis.

22             MS. MASS:  Thank you, your Honor.  I would like to

23   address counts two and three.

24             THE COURT:  You can address my other question too

25   about this isn't really a loss, just a "we hope you comply with

1    it law" that the state has testified to in that LA trial.

2         MS. MASS:  I can confess I was not there for that

3    testimony, but I do know that the Secretary of State has not

4    taken any steps to enforce those -- you know, to fine any

5    corporations or issue regulations that are a precursor to

6    issuing fines, and so there hasn't been enforcement yet.  And

7    that's really, you know, what -- in terms of the Fourteenth

8    Amendment and state action, that's the state action that should

9    be directed at is when is the state -- when is the state

10   enforcing these laws, and this goes for both AB 979 and SB 826.

11        But in terms of the challenge --

12        THE COURT:  I'm not sure I understand.  So these

13   lawsuits are premature or they're moot?  Is that what I'm

14   supposed to take from that argument?  I should dismiss them for

15   mootness purposes?

16        MS. MASS:  Perhaps ripeness.  We haven't brought that

17   as an argument in this motion, but it is an argument that was

18   brought with respect to one of the state -- one of the state

19   court cases in challenging AB 979 is that it's really not ripe

20   for consideration because the Secretary of State has not taken

21   steps to enforce the laws.

22        So in terms of injunctive relief against the Secretary that

23   there is a ripeness problem, but it isn't something that we

24   raised in this motion, and so --

25        THE COURT:  Okay.

20

1          MS. MASS:  Yeah.  So that will be something that

2     perhaps we get to down the road.

3          THE COURT:  Okay.  Let's get back to counts two and

4     three then.

5          MS. MASS:  Thank you.  I mean, as the Court has

6     noted, *Salerno* is the governing standard.  And as counsel for

7     plaintiff has admitted, corporations can meet the requirements

8     of AB 979 without considering race.  And, actually, with

9     respect to the plaintiff's own claim, which is that -- which

10    only challenges AB 979 with respect to racial categories, the

11    fact that corporations can meet the requirements of AB 979

12    without any consideration of race and only consideration of

13    LGBT categories is itself a basis to dismiss plaintiff's counts

14    two and three.

15       In addition --

16          THE COURT:  Say that one more time.

17          MS. MASS:  Well, so the plaintiffs could challenge

18    AB 979 only with respect to the use of racial categories --

19          THE COURT:  Right.

20          MS. MASS:  -- but any corporation that's covered by

21    that law could comply with it by using only LGBT categories,

22    only adding Board of Directors that are gay or transgender --

23          THE COURT:  Right.

24          MS. MASS:  -- bisexual or lesbian, and then in that

25    way not use race at all.  If they're not using racial

21

1    categories and the plaintiffs are challenging it only based on

2    the use of racial categories, then there's a -- you know, all

3    of the law could be implemented without violating the Equal

4    Protection Clause in the manner that plaintiffs have set out in

5    their complaint.

6            THE COURT:  Why wouldn't -- why wouldn't I at least

7    strike down the race portions?  Maybe the law goes forward on

8    the LGBTQ portions, I don't know.  Those aren't being

9    challenged in this lawsuit, but you're saying I can't take up

10   the argument that at least a portion of the law that requires

11   public corporations to have certain minority members on their

12   board, that I can't consider that because it also has an LGBTQ

13   component as well?

14           MS. MASS:  What we're saying, your Honor, is that it

15   would be -- that it would be inappropriate to consider it in a

16   vacuum, just in the abstract without specific facts because --

17   and that's the reason that *Salerno* exists.

18           THE COURT:  Yeah, I'm not following that.  The

19   argument that I couldn't issue an order saying at least that

20   portion of the law, AB 979, that orders or requires

21   corporations to have a certain number of minority members, that

22   I can't strike that down?  I couldn't issue an order as to that

23   portion of the law?

24           MS. MASS:  I wouldn't say that, your Honor, just to

25   try to make the distinction clearer.

1      THE COURT:  But you're not going to dismiss their

2  claim, right?

3      MS. MASS:  Right.  Because it's a facial challenge,

4  and there are no facts -- they have not alleged facts

5  sufficient to really state an equal protection challenge here.

6  And the reason is that as you -- as I'm sure as you're well

7  aware, when looking at a state program, a public program like a

8  public contracting program or a university admissions program

9  where the state is using racial categories, courts get deeply

10  involved in how is that program implemented.

11      THE COURT:  Right.

12      MS. MASS:  In *Bakke*, for example, there were 16 seats

13  that were set aside only for students of color.  We don't have

14  that situation here.  We have a situation where diversity is

15  something that the state's requiring, but how the corporations

16  actually implement that is going to depend corporation to

17  corporation.  And without the specific facts where the

18  plaintiffs could allege that there was discrimination in the

19  particular implementation of this law, the Court's not in a

20  position to really evaluate whether there's a discrimination

21  problem in the implementation of the law.  And as counsel

22  said --

23      THE COURT:  Sorry to interrupt, but I thought I read,

24  Mr. Berry, at least one of your clients was a board member and

25  has alleged that he lost his seat because of this law, right?

1      MR. BERRY:  That's correct, your Honor, yes.  Because

2   of -- yes, because of 826.

3      THE COURT:  Yeah.  Isn't that a fact that I should

4   consider in determining whether the case should go forward or

5   not or -- or are you arguing maybe they can bring an as applied

6   challenge and not bring a facial challenge?  Is that what

7   you're arguing?

8      MS. MASS:  Exactly, your Honor.

9      THE COURT:  Okay.

10     MS. MASS:  They can bring an as applied challenge as

11  to that shareholder, but they can't bring across the board,

12  we're striking down the state law without -- particularly where

13  counsel has admitted that it can be implemented without

14  consideration of race.  And --

15     THE COURT:  What do I do with the *City of*

16  *Jacksonville* and the *Bras,* the Ninth Circuit case?  What do you

17  do with those, because those were both racial laws involving

18  race.  Not gender, but race.  So do I ignore those?

19     MS. MASS:  No, no, your Honor.  There are important

20  differences here.  In the *City of Jacksonville* case, it was a

21  set aside, so there were ten percent of the contract spending

22  that was -- and/or certain contracts because there was a change

23  in the program.

24     But either way there were certain limited resources that

25  were reserved only for the exclusive competition of certified

24

1    black and female owned businesses.

2        And so the plaintiffs in that case literally could not

3    compete for those seats, and that's just not true here.

4    There's no particular percentage requirement.  It -- you know,

5    corporations can add seats, so any corporation that wants to

6    hire, you know, include a white director can include that white

7    director and also can include a person from an underrepresented

8    community.

9        And so that's a distinction that's critically important

10   because of what the Court said in *Bakke*.  Your Honor, the Court

11   noted that racial diversity can be a pull and that race can be

12   considered, and I want to just point you to this language.  The

13   Court said, "The experience of other university admissions

14   programs which take place into account in achieving the

15   education diversity valued by the First Amendment demonstrates

16   that the assignment of a fixed number of places to a minority

17   group is not a necessity means towards that end."

18       We do not -- we have a number, but we also have an

19   expanding and -- the possibility of expanding the size of the

20   board so that it's not a limited resource the way public

21   contracting moneys in *City of Jacksonville* were and in *Bras*.

22            THE COURT:  I seem to recall the *Meland* lawyer

23   quoting a Supreme Court judge about, in effect, "You may want

24   to call it a quota, but this is the quota requiring a

25   corporation."  She was arguing to add seats.  It doesn't change

25

1   the fact that it's still a quota.  Again, in was the race

2   cases, not in the gender case.

3       Mr. Berry, you probably know what case I'm talking about,

4   who the Supreme Court judge is.  But it hit home with me that

5   you can try to convince me that it's not a quota, in the race

6   area, but this is a quota.  You may not want me to call it a

7   quota, but it's a quota.  And I know I'm paraphrasing, and I

8   can't remember the Supreme Court judge, but I just remember the

9   *Meland* lawyer reminding me over and over again that the Supreme

10  Court justice -- you can't split hairs the way you're trying to

11  split hairs.  It's a race-based law, and it is in every aspect,

12  at least in the Supreme Court's view, a quota.

13      Do you know what I'm talking about, Mr. Berry?  Justice

14  Powell, okay?  Does it ring a bell?

15              MR. BERRY:  Yeah, and --

16              THE COURT:  Sorry.  Go ahead, Mr. Berry.

17              MR. BERRY:  Okay.  So I would -- I think there's some

18  language from Justice Powell.  But there's, you know, the

19  *Grutter* case, and that was a case which upheld -- the Supreme

20  Court upheld a -- sort of a non-quota plus factor system for

21  the University of Michigan, I believe it is an undergraduate,

22  if I'm recalling that correctly.  They say that -- so quotas

23  are patently unconstitutional.  But, honestly, like *Bras* says,

24  it doesn't have to be a quota to be unconstitutional.  If --

25              THE COURT:  Yeah.  *Bras* says, "Plaintiffs alleging

26

1  equal protection violations need not demonstrate that rigid

2  quotas make it impossible for them to compete for any given

3  benefit.  Rather, they need only show that they are forced to

4  compete on an unequal basis."

5      And the *Bras* Court instructed that "The relevant question

6  is not whether a statute requires the use of such measures, but

7  whether it authorizes or encourages them."

8      The Ninth Circuit in the *Meland* case picked up on

9  especially that phrase, encourages in overturning my ruling

10  that the plaintiffs didn't have standing.  I've learned my

11  lesson on that language.

12      I understand your argument, Ms. Mass, I just think you're

13  splitting hairs on these two claims.  I do believe they can go

14  forward.

15      I don't need any further argument.  I'm going to rule on

16  the motion to dismiss this afternoon.  I'm not going to issue a

17  written opinion.  You can thank Congress and, in particular,

18  the United States Senate for the fact you're not getting a

19  written opinion on a motion to dismiss.  If and when we ever

20  get a full complement of District Court judges, then maybe we

21  might be able to issue more written opinions.

22      And so now for 2022 I've put on the record my complaints.

23  But in all seriousness, on motions to dismiss in particular,

24  let me tell you that I am granting this motion in part and

25  denying this motion in part.  Not -- again, the request for

27

1    judicial notice and evidentiary objections, I'm not going to

2    specifically issue any type of ruling on because I don't think

3    it's necessary for a motion to dismiss.

4        In terms of count one, as I've indicated, it's the facial

5    challenge to 826 -- AB 826.  And I do believe the *Salerno*

6    standard is the standard to apply to for this claim, not to

7    *Citizens United* which is readily distinguishable.

8        The defendants contend that the plaintiff has not and

9    cannot plausibly allege that all applications of 826 -- I'm

10   sorry -- SB 826 are unconstitutional, and that count one should

11   be dismissed.  The Court does agree with respect to count one,

12   that plaintiff has not plausibly alleged that all applications

13   of SB 826 are unconstitutional and violative of the Equal

14   Protection Clause of the Fourteenth Amendment, nor does the

15   case law that was cited in support of plaintiff's position

16   support its argument that all applications are

17   unconstitutional.

18       Significantly, none of the cases that plaintiff cites

19   specifically addresses minimum gender diversity requirements

20   let alone applies a rule that such minimum gender diversity

21   requirements are per se unconstitutional.  And because the

22   plaintiff has not plausibly alleged that SB 826 is

23   unconstitutional in all its applications, the Court dismisses

24   count one without prejudice.  I leave it up to the plaintiffs

25   whether they believe they can allege -- further allege a facial

28

1   challenge or whether they want to change their theory and

2   allege an as-applied challenge to SB 826.  So that motion is

3   granted without prejudice.

4       In terms of the counts two and three, the challenge is to

5   AB 979, the racial classifications portions only.  Plaintiff

6   generally claims that AB 979 is facially unconstitutional

7   because everyone competing for a board position with a public

8   company headquartered in California faces an uneven playing

9   field, and that unfair process alone violates the Fourteenth

10  Amendment.

11      The defendant counters that there are constitutional

12  applications of AB 979, and the defendant has provided various

13  hypotheticals in support of its argument.  The defendant's

14  leading hypothetical is that any corporation can comply with

15  979 by appointing only LGBTQ individuals to fill the required

16  director positions.  The defendant also pauses hypotheticals of

17  race neutral board selection processes to achieve compliance.

18  Defendant contents that plaintiff's facial challenge to AB 979,

19  therefore, fails under *Salerno*.

20      Plaintiff, in response, argues that defendant's

21  hypotheticals miss the mark, because what makes AB 979

22  unconstitutional is its authorization or encouragement of

23  race-conscious decisions, not whether race-conscious decisions

24  may ultimately be avoided through alternative race-mutual

25  processes.  And again, in support, two very persuasive cases,

29

1    at least to this Court, is the *City of Jacksonville* case, the

2    1993 Supreme Court case, and the *Bras v. California Public*

3    *Utilities Commission Case*, 1995 Ninth Circuit case.

4        It is those two cases, as we've discussed, that I think

5    plaintiff's claims -- second and third claims -- are properly

6    pled and should be allowed to go forward.

7        Plaintiff, in particular, insisted it has stated a

8    plausible claim that AB 979 on its face authorizes or

9    encourages racial discrimination.  And because it encourages

10   such discrimination, it's unconstitutional regardless of

11   whether discrimination is actually required in every instance.

12       Plaintiff's point is that the illegality remains even if

13   some companies could devise workaround, as defendant's

14   hypothetical attempts to demonstrate, that AB 979 encourages

15   race-based discrimination, it is also why it is no defense that

16   AB 979 combines two distinct groups, racial minorities and

17   LGBTQ.

18       So counts two and three at this point will be allowed to go

19   forward; the motion to dismiss is denied.

20       As to count four, as I've indicated, I don't believe that

21   there is any legal basis for a separate standalone claim under

22   the internal affairs doctrine.  Defendants argue that the

23   doctrine claim is not cognizable, and as the reply brief

24   hammers home, the plaintiffs have not brought forward a single

25   case that recognizes the internal affairs doctrine as a

1    standalone cause of action.

2         They argue this is done surprising in light of the Supreme

3    Court's clear dictate that the internal affairs doctrine is a

4    conflict of laws principle, not a cause of action.  The

5    internal affairs doctrine is a conflict of laws principle which

6    recognizes that only one state should have the authority to

7    regulate the corporation's internal affairs.

8         "Matters peculiar to the relationships among or between

9    corporations and its current officers, directors, and

10   shareholders, because otherwise a corporation could be faced

11   with conflicting demands."  That's the *Edgar v. MITE Corp.*

12   case, a 1982 Supreme Court case.

13        Likewise, the Eastern District Courts have described the

14   doctrine as follows:  This is an Eastern District California

15   case from 2005.  "The internal affairs doctrine is a conflict

16   of laws principle that recognizes that only one state should

17   have the power to regulate matters peculiar to the relationship

18   among the corporation, its officers and directors, and its

19   shareholders."

20        While plaintiffs cite to a Delaware Supreme Court case,

21   *McDermott*, perhaps to try to persuade the Court otherwise, this

22   case is not binding on the Court, and the Court did not find

23   any point in which the Court treats the internal affairs

24   doctrine as a standalone cause of action.

25        Again, it's merely a suggestion or an application of the

1    internal affairs doctrine to other claims.  This does not

2    persuade this Court that a new standalone cause of action

3    should be recognized.

4        Plaintiff does try to ground its internal affairs document

5    claims in other clauses of the Constitution, particularly the

6    due process clause of the Fourteenth Amendment and the commerce

7    clause.  The plaintiff contents that its members have

8    Fourteenth Amendment due process rights to know what law will

9    apply to the covered corporations they own stock in, and that

10   AB 979 runs afoul of the Congress clause's prohibition, want

11   state laws that create an impermissible risk of inconsistent

12   regulation by different states.

13       But as the defendants argue, none of these purported

14   constitutional bases for count four are pled in the operative

15   complaint, and plaintiff cannot advance a theory not pled in

16   the operative complaint because that would deprive defendant

17   fair notice of plaintiff's claims.

18       Because a complaint does not identify a clause of the

19   constitution creating the cause of action for enforcement of

20   the internal affairs doctrine and because the plaintiff has not

21   brought forward any binding case law recognizing a standalone

22   cause of action, the Court dismisses count four.  I'm going to

23   dismiss that claim without -- I mean, I'm sorry, with

24   prejudice.  I don't believe that there's any amendment that

25   could be brought in an amended complaint that would not make

32

1   the claim at this point futile.  So that claim will be

2   dismissed with prejudice.

3       Again, the Court grants defendant's motion to dismiss count

4   one without prejudice, grants defendant's motion to dismiss

5   count four with prejudice, denies defendant's motion as to

6   counts two and three.

7       If you want to file an amended complaint, do so within

8   20 days, and the defendants will have 20 days thereafter to

9   file a responsive pleading.  Okay?  All right.  Thank you all.

10  The transcript will stand at the Court's order.  If you want to

11  order a copy of the transcript, just contact the court reporter

12  and she can get it to you.

13          MS. MASS:  Thank you, your Honor.

14          THE COURT:  Okay.  Thank you all.

15          MR. BERRY:  Your Honor, may I ask one quick question?

16          THE COURT:  Sure.

17          MR. BERRY:  With respect to a due process Fourteenth

18  Amendment claim or a claim arising under the commerce clause,

19  are those covered by your ruling saying that it's dismissed

20  with prejudice as the internal affairs doctrine claim?

21          THE COURT:  You mean, a separate claim under those?

22          MR. BERRY:  Yes.  So if we were to amend our

23  complaint to add a due process claim under the Fourteenth

24  Amendment and a claim under the commerce clause, would that be

25  covered?

33

1        THE COURT:  No.  It only covers what you pled.

2    There's always an issue, though, of should I allow an amendment

3    that now raises new claims that you didn't put in your initial

4    cause of action?  Normally I would say no, but we're at such an

5    early stage in this case, if you think you can allege those

6    types of claims or causes of action, I'd allow that.  It will

7    expand the complaint which will make me really happy, but I'll

8    leave it up to you as to whether you want to go down that path

9    as well.

10        MR. BERRY:  Thank you.  I'm not committing to

11    anything, I just wanted to understand.

12        THE COURT:  Yeah.  No, I understand.

13        MR. BERRY:  Thank you.

14        THE COURT:  All right.  Thank you all.

15        (Proceedings adjourned:  2:23 p.m.)

16                    ---o0o---

17    I certify that the foregoing is a correct transcript from the

18    record of proceedings in the above-entitled matter.

19

20                    /s/ Thresha Spencer
                    THRESHA SPENCER
21                    CSR No. 11788, RPR

22

23

24

25

1   BENBROOK LAW GROUP, PC
     BRADLEY A. BENBROOK (SBN 177786)
2   STEPHEN M. DUVERNAY (SBN 250957)
     400 Capitol Mall, Suite 2530
3   Sacramento, CA  95814
     Telephone: (916) 447-4900
4   Facsimile:  (916) 447-4904
     brad@benbrooklawgroup.com
5   steve@benbrooklawgroup.com

6   BOYDEN GRAY & ASSOCIATES PLLC
     C. BOYDEN GRAY, Admitted Pro Hac Vice
7   JONATHAN BERRY, Admitted Pro Hac Vice
     MICHAEL BUSCHBACHER, Admitted Pro Hac Vice
8   801 17th Street NW, Suite 350
     Washington, DC 20006
9   Telephone: (202) 955-0620
     berry@boydengrayassociates.com
10
     Attorneys for Plaintiff
11

12

13 UNITED STATES DISTRICT COURT

14 EASTERN DISTRICT OF CALIFORNIA

15

16 | ALLIANCE FOR FAIR BOARD RECRUITMENT, | Case No.: 2:21-cv-01951-JAM-AC

17 | Plaintiff, | **NOTICE OF INTENT TO STAND ON COMPLAINT**

18 | v. |

19 | SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California, |

20 | |

21 | Defendant. |

22

23      On January 11, 2022, this Court held a hearing on Defendant Shirley N. Weber's Motion to

24 Dismiss Plaintiff Alliance for Fair Board Recruitment's Complaint (ECF No. 41). The Court

25 issued a ruling from the bench at the conclusion of argument granting that motion in part and

26 denying it in part. *See* ECF No. 70. The Court dismissed Plaintiff's Fourteenth Amendment Equal

27 Protection challenge to SB 826 (Count I) without prejudice and dismissed Plaintiff's Constitutional

28 Internal Affairs Doctrine challenges to SB 826 and AB 979 (Count IV) with prejudice. The Court

SER0036

denied Defendant's motion to dismiss as to Plaintiff's Fourteenth Amendment Equal Protection challenge to AB 979 (Count II) and Plaintiff's challenge to AB 979 under 42 U.S.C. § 1981 (Count III), allowing those two claims to go forward as pled. The Court gave Plaintiff twenty days to file an amended complaint, and Defendant twenty days thereafter to respond. *See* ECF No. 70.

Having carefully considered the Court's ruling and reasoning, Plaintiff hereby gives the Court notice that it intends to forgo amendment and to stand on its Complaint. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) (plaintiff may elect to forego amendment by giving the court notice in writing that it intends to stand on its complaint). Counsel for Plaintiff has conferred with counsel for Defendant, who has agreed that a responsive pleading as to the remaining allegations in the Complaint will be due no later than twenty days after the filing of this notice.[1]

Respectfully submitted,

Dated: January 27, 2022

BOYDEN GRAY & ASSOCIATES PLLC


By:  /s/ Michael Buschbacher

*Counsel for Plaintiff*

---

[1] Plaintiff does not waive its right to appeal the dismissal of Counts I and IV at the proper time, or to seek leave to amend at some future date. Plaintiff is not seeking interlocutory appeal.

| | |
|---|---|
| **From:** | caed_cmecf_helpdesk@caed.uscourts.gov |
| **To:** | CourtMail@caed.uscourts.dcn |
| **Subject:** | Activity in Case 2:21-cv-01951-JAM-AC Alliance for Fair Board Recruitment v. Shirley N. Weber Motion Hearing. |
| **Date:** | Tuesday, January 11, 2022 2:31:37 PM |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

### Eastern District of California - Live System

### Notice of Electronic Filing

The following transaction was entered on 1/11/2022 at 2:30 PM PST and filed on 1/11/2022
**Case Name:** Alliance for Fair Board Recruitment v. Shirley N. Weber
**Case Number:** 2:21-cv-01951-JAM-AC
**Filer:**
**Document Number:** 70(No document attached)

**Docket Text:**
**MINUTES for proceedings held via video conference before District Judge John A. Mendez: MOTION HEARING held on 1/11/2022. Bradley Benbrook, Jonathan Berry and Michael Buschbacher appeared via video for the plaintiff. Julia Mass, Heidi Joya and Lisa Cisneros appeared via video for the defendant. The Court GRANTED IN PART and DENIED IN PART Defendant's [41] Motion to Dismiss; GRANTED Plaintiff twenty (20) days to file an amended complaint; and GRANTED Defendant twenty (20) days thereafter to respond. Court Reporter: T. Spencer. [TEXT ONLY ENTRY] (Michel, G.)**

**2:21-cv-01951-JAM-AC Notice has been electronically mailed to:**

Anthony V Seferian    Anthony.Seferian@doj.ca.gov

Bradley A. Benbrook    brad@benbrooklawgroup.com, kelly@benbrooklawgroup.com, steve@benbrooklawgroup.com

C. Boyden Gray    cbg@cboydengray.com

Edward Nugent    edward.nugent@doj.ca.gov

Heidi Joya     heidi.joya@doj.ca.gov

Jonathan A. Berry     berry@boydengrayassociates.com

Jordan Elizabeth Smith     jordanesmith789@gmail.com

Julia Harumi Mass     julia.mass@doj.ca.gov, laura.faer@doj.ca.gov,
maritza.padilla@doj.ca.gov, sean.puttick@doj.ca.gov, vilma.solana@doj.ca.gov

Kanwalroop Kaur Singh     kanwalroop.singh@doj.ca.gov

Lisa Janine Cisneros     lisa.cisneros@doj.ca.gov, Kazzi.Figueroa-Lee@doj.ca.gov

Michael Buschbacher     buschbacher@boydengrayassociates.com

Sophia Carrillo     sophia.carrillo@doj.ca.gov, gloria.pang@doj.ca.gov

Stephen Michael Duvernay     steve@benbrooklawgroup.com

William J. Brown , Jr     bill@brownwegner.com, mgalvez@brownwegner.com

**2:21-cv-01951-JAM-AC Electronically filed documents must be served conventionally by the filer to:**

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF CALIFORNIA

7

8  CREIGHTON MELAND, JR.,              No.  2:19-cv-02288-JAM-AC

9            Plaintiff,

10      v.                             **ORDER DENYING PLAINTIFF'S MOTION
                                       FOR PRELIMINARY INJUNCTION**
11  SHIRLEY N. WEBER, in her
    official capacity as
12  Secretary of State of the
    State of California,
13
             Defendant.
14

15

16                   I.    INTRODUCTION

17      This lawsuit is one of multiple ongoing legal challenges to

18  California Senate Bill No. 826 ("SB 826").  See Crest v. Padilla,

19  Case No. 19STCV27651, 2019 WL 3371990 (Cal. Super. 2019);

20  Alliance for Fair Board Recruitment v. Weber, No. 2:21-cv-01951-

21  JAM-AC (E.D. Cal. 2021); National Center for Public Policy

22  Research v. Weber, No. 2:21-cv-02168-JAM-AC (E.D. Cal. 2021).

23  Signed into law by Governor Brown in 2018, SB 826 requires

24  publicly held corporations headquartered in the state to have at

25  least one woman on their board of directors.  Cal. Corp. Code

26  § 301.3(a).  The minimum number is set to increase after December

27  31, 2021; specifically, while a corporation with four or fewer

28  directors will continue to be required to have at least one

                              1

1 female director, a corporation with five directors will be

2 required to have at least two female directors, and a corporation

3 with six or more directors will be required to have at least

4 three female directors. Cal. Corp. Code § 301.3(b)(1)-(3). A

5 corporation may increase the number of directors on its board to

6 comply with these minimum gender diversity requirements. Cal.

7 Corp. Code § 301.3(a). Additionally, the Secretary of State is

8 authorized to impose fines upon violators. Cal. Corp. Code

9 § 301.3(e)(1). A first violation may result in a $100,000 fine

10 and any subsequent violations may result in $300,000 fines. Cal.

11 Corp. Code § 301.3(e)(1)(B)-(C).

12      SB 826 has generated not only multiple lawsuits, but also

13 vigorous public debate. However, it is not the province of this

14 Court to assess the soundness of the policies behind SB 826 or of

15 SB 826 itself. Rather the Court's exclusive and painstaking

16 focus is on the unique constitutional issues before it.

17      In the present action, Creighton Meland, Jr., ("Plaintiff")

18 a shareholder of a OSI Systems, Inc., ("OSI"), a publicly held

19 corporation subject to SB 826, challenges the law on equal

20 protection grounds. See Compl., ECF No. 1. Specifically,

21 Plaintiff asserts SB 826 impairs his right to vote for OSI's

22 board of directors in violation of the Equal Protection Clause of

23 the Fourteenth Amendment. Id. Thus, Plaintiff seeks to enjoin

24 SB 826. Mot. for Prelim Inj ("Mot."), ECF No. 23-1.

25      As noted at the October 19, 2021 hearing on Plaintiff's

26 motion, this area of equal protection law is unsettled and

27 requires the Court to address an issue of first impression:

28 whether minimum gender diversity requirements violate the Equal

SER0041

1  Protection Clause.  October 19, 2021 Hearing Transcript in <u>Meland</u>

2  <u>v. Weber</u>, No. 2:19-cv-02288-JAM-AC (E.D. Cal. 2019) (hereinafter

3  "Hrg. Trans.") at 33.  Because the law is unsettled, Plaintiff

4  here – or plaintiffs in one of the other ongoing lawsuits –  may

5  ultimately prevail in their constitutional challenge to SB 826.

6      But that ultimate question of SB 826's constitutionality is

7  not before the Court today.  Rather, a much narrower question is

8  presented: has Plaintiff carried his burden to show he is

9  entitled to a preliminary injunction?  After careful

10  consideration of the parties' briefs, supporting documents,

11  declarations and exhibits, and oral arguments, the relevant law,

12  and the record in this case, the Court concludes that he has not.

13  Accordingly, Plaintiff's motion for a preliminary injunction is

14  denied.

15                    II.  BACKGROUND

16      OSI is a publicly traded corporation headquartered in

17  Hawthorne, California and incorporated in Delaware.  Compl.

18  ¶¶ 17-18.  Thus, it must comply with SB 826.  <u>Id.</u> ¶ 20.  When

19  Plaintiff filed his complaint on November 13, 2019, OSI had a

20  seven-member, all-male board of directors.  <u>Id.</u> ¶ 21.  To comply

21  with SB 826, OSI had to elect a woman to the board by the end of

22  2019 and will have to elect two more by the end of 2021.  <u>Id.</u>

23  Plaintiff, a shareholder of OSI, votes on the members of the

24  board of directors.  <u>Id.</u> ¶ 22.  Plaintiff alleges SB 826's

25  minimum gender diversity requirements constitute a sex-based

26  classification that harms shareholder voting rights and violates

27  the Fourteenth Amendment.  <u>Id.</u> ¶¶ 29, 31.

28  ///

                              3

On December 12, 2019, OSI's shareholders elected a woman to the board of directors.  Mot. at 4.  To remain in compliance with SB 826, two more female board members must be added by the end of 2021.  Id.  Plaintiff plans to vote in the next election in December 2021.  Id.

In April 2020, the Court granted Defendant's motion to dismiss for lack of standing.  Order Granting Mot. to Dismiss, ECF No. 16.  On June 21, 2021, the Ninth Circuit Court of Appeals reversed and remanded and this Court reopened the case.  USCA Opinion, ECF No. 21.  The Ninth Circuit held that Plaintiff had standing because he "has plausibly alleged that SB 826 requires or encourages him to discriminate on the basis of sex."  Meland v. Weber, 2 F.4th 838, 842 (9th Cir. 2021).

Plaintiff then filed the present motion, arguing he is likely to succeed on the merits, he is likely to face irreparable harm absent an injunction, and the balance of harms and public interest favors an injunction.  See generally Mot.  Secretary of State, Shirley Weber ("Defendant"), opposed Plaintiff's motion.  Opp'n, ECF No. 32.  Plaintiff responded.  Reply, ECF No. 46.

III.   OPINION

A.   Supplemental Filings

In addition to their memoranda in support of and in opposition to Plaintiff's motion for a preliminary injunction, both parties filed thousands of pages of "extracurricular" documents. Hrg. Trans. At 2-9.  First, Defendant filed a request for judicial notice, see Def.'s Request for Judicial Notice ("RFJN"), ECF No. 33, which Plaintiff opposed, see Pl.'s Opp'n to Def.'s RFJN, ECF No. 47, and Defendant then replied, see

4

1  Def.'s Reply to Pl.'s Opp'n to Def.'s RFJN, ECF No. 53.  For the

2  reasons set forth at the hearing, the Court denies Defendant's

3  request for judicial notice as to Exhibit 31 but grants the

4  request as to all other exhibits.  Hrg. Trans. at 4-6.  In doing

5  so, the Court takes judicial notice only of the existence of

6  these documents, not their substance including any disputed or

7  irrelevant facts within them.  Lee v. City of Los Angeles, 250

8  F.3d 668, 690 (9th Cir. 2001).

9      Defendant also filed evidentiary objections to Plaintiff's

10  declaration in support of his motion at ECF No. 23-2.  See

11  Def.'s Obj. to Meland Decl., ECF No. 34.  Plaintiff responded.

12  See Pl.'s Reply to Def.'s Obj., ECF No. 49.  The Court reviewed

13  these objections.  However, as the Court explained at the

14  hearing, courts self-police evidentiary issues and a formal

15  ruling is unnecessary to the determination of this motion.  Hrg.

16  Trans. at 6-7; see also Sandoval v. Cty. Of San Diego, 985 F.3d

17  657, 665 (9th Cir. Jan. 13, 2021) (citing to Burch v. Regents of

18  the University of California, 433 F.Supp.2d 1110, 1119) (E.D.

19  Cal. 2006)).  Thus, the Court declines to specifically rule on

20  each objection.

21      Next, Plaintiff filed evidentiary objections to Defendant's

22  declarations in support of her opposition to Plaintiff's motion.

23  See Pl.'s Obj. to Def.'s Decls., ECF No. 48.  Defendant

24  responded.  See Def.'s Reply to Pl.'s Obj., ECF No. 52.  For the

25  reasons set forth at hearing – and principally the generalized,

26  categorical nature of Plaintiff's objections – the Court

27  overrules Plaintiff's objections.  Hrg. Trans. at 7-8; see also

28  Sandoval, 985 F.3d at 666 (explaining why "generalized

5

1   objections" are insufficient).

2       Finally, Defendant raised objections to and moved to strike

3   (1) Plaintiff's supplemental declaration and (2) portions of

4   Plaintiff's reply brief.  See Def.'s Obj. to Meland Supp. Decl.

5   and Mot. to Strike, ECF No. 54.  The Court addressed this motion

6   at the hearing.  See Hrg. Trans. at 8-9.  Specifically, the

7   Court explained that Plaintiff improperly added new facts in his

8   reply brief and submitted a declaration presenting an entirely

9   new theory of standing, namely that he intends to run for OSI's

10  Board of Directors.  Id.  Because these materials advance a

11  theory not pled in the operative complaint, the Court grants

12  Defendant's motion to strike, and did not consider these new

13  materials in deciding the motion.

14      B.   Standing

15      As a threshold matter, Defendant renews her argument that

16  Plaintiff lacks standing, and that this case should therefore be

17  dismissed.  Opp'n at 8-11.  The Court granted Defendant's

18  previous motion to dismiss for lack of standing.  See Order

19  Granting Mot. to Dismiss at 13.  The Ninth Circuit reversed,

20  finding Plaintiff had standing because he "has plausibly alleged

21  that SB 826 requires or encourages him to discriminate on the

22  basis of sex."  Meland, 2 F.4th at 842.  According to Defendant,

23  new evidence alters the Ninth Circuit's standing analysis.

24      "If the court determines at any time that it lacks subject-

25  matter jurisdiction, the court must dismiss the action."  Fed. R.

26  Civ. P. 12(h)(3).  "The party invoking federal jurisdiction bears

27  the burden of establishing the elements of standing, and each

28  element must be supported in the same way as any other matter on

6

1    which the plaintiff bears the burden of proof, i.e., with the

2    manner and degree of evidence required at the successive stages

3    of the litigation." Meland, 2 F.4th at 843 (internal citations

4    and quotation marks omitted).

5         Defendant emphasizes that at the time the Ninth Circuit held

6    Plaintiff had standing, evidence concerning OSI's election

7    process and Plaintiff's voting history were not yet part of the

8    record.  Opp'n at 9.  Specifically, Defendant points to newly

9    discovered evidence that in both OSI director elections in which

10   Plaintiff has been eligible to vote, he voted against the sole

11   female OSI director nominee, with no impact on OSI or its

12   compliance with SB 826.  Id.  Further, Defendant highlights

13   Plaintiff owns only 65 of nearly 18 million (0.000363%) OSI

14   shares.  Id.  His vote therefore did not and cannot sway the

15   election in favor of, or against, any particular director.  Id.

16   It is "mathematically impossible." Id. at 10.  Because the

17   present record reflects Plaintiff is free "to withhold his vote,

18   vote in favor of any director, or decline to vote, without

19   impacting in any way who is elected to the Board," Defendant

20   contends Plaintiff has not demonstrated injury.  Id. at 9.

21        At the October hearing, the parties presented further oral

22   argument as to this issue, see Hrg. Trans. at 14-19, which the

23   Court considered along with the briefs and the Ninth Circuit's

24   opinion.  The Ninth Circuit decision controls.  See Meland, 2

25   F.4th at 844-848.  Specifically, the Ninth Circuit reasoned that

26   Plaintiff is injured because SB 826 "requires or encourages him"

27   to vote according to its dictates.  Id. at 846 (emphasis added).

28   Applying this reasoning, Plaintiff remains "encouraged" to

7

1  "discriminate on the basis of sex" regardless of how few shares

2  he has or how he has voted in the past two elections.  Id. at

3  849.

4        In short, the Court finds the newly discovered evidence

5  concerning OSI's election process and Plaintiff's voting history

6  does not alter the Ninth Circuit's prior analysis.  Because the

7  injury the Ninth Circuit identified remains, he continues to have

8  standing.  Accordingly, Defendant's renewed request to dismiss

9  the case for lack of standing is denied.

10       C.   Preliminary Injunction

11            1.   Legal Standard

12       A preliminary injunction is "an extraordinary remedy that

13  may only be awarded upon a clear showing that the plaintiff is

14  entitled to such relief."  Winter v. Nat. Res. Def. Council,

15  Inc., 555 U.S. 7, 22 (2008).  An injunction may be granted only

16  where the movant shows that (1) they are likely to succeed on

17  the merits, (2) they are likely to suffer irreparable harm in

18  the absence of preliminary relief, (3) the balance of equities

19  tips in their favor, and (4) an injunction is in the public

20  interest.  Id. at 20.  The moving party bears the burden of

21  proving these elements.  Id.

22            2.   Analysis

23       Plaintiff moves for a preliminary injunction on his sole

24  claim for violation of the Fourteenth Amendment's Equal

25  Protection Clause.  See generally Mot.

26                 a.   Likelihood of Success on the Merits

27       As to the first Winter factor, Plaintiff contends he is

28  likely to prevail on the merits because "SB 826's broad,

8

1    arbitrary, and perpetual quota is unconstitutional."  Mot. at 4.

2         Under the Equal Protection Clause of the Fourteenth

3    Amendment, sex-based classifications are subject to intermediate

4    scrutiny, which means they must be "supported by an 'exceedingly

5    persuasive justification' and substantially related to the

6    achievement of that underlying objective."  Associated Gen.

7    Contractors of Am., San Diego Chapter, Inc. v. California Dep't

8    of Transp., 713 F.3d 1187, 1195 (9th Cir. 2013) (internal

9    citations omitted).  This level of scrutiny applies regardless of

10   whether a classification "discriminates against males rather than

11   against females."  Mississippi Univ. for Women v. Hogan, 458 U.S.

12   718, 723 (1982).  The state has the burden of justifying the sex-

13   based classification.  Monterey Mech. Co. v. Wilson, 125 F.3d

14   702, 713 (9th Cir. 1997) (citation omitted).

15        Plaintiff contends SB 826 imposes a sex-based classification

16   which does not survive intermediate scrutiny.  Mot. at 4-12.

17   Defendant insists the opposite, arguing that intermediate

18   scrutiny is satisfied.  Opp'n at 11-23.  Beginning with the first

19   issue of whether SB 826 is supported by an exceedingly persuasive

20   justification, Defendant contends there are two such

21   justifications: 1) remedying past discrimination, and

22   2) advancing diversity on public boards.  Opp'n at 12-19.  As to

23   the first justification, Plaintiff concedes that remedying past

24   discrimination is an important government interest and has been

25   recognized as such by the Ninth Circuit.  Mot. at 7 (citing to

26   Associated Gen. Contractors of California, Inc. v. City and

27   County of San Francisco, 813 F.2d 922, 932 (9th Cir. 1987)).

28   However, Plaintiff challenges whether the state had sufficient

9

1    evidence of discrimination to support its conclusion that

2    remedial action was warranted here.  Mot. at 7-9; Reply at 6-9.

3        Emphasizing that disparities alone do not demonstrate

4    discrimination, Plaintiff claims the state relies only on raw

5    disparities to demonstrate women have suffered discrimination in

6    corporate board selection processes.  Mot. at 7-9.  Further,

7    according to Plaintiff, recent hiring trends undermine the

8    legislature's determination that sex discrimination exists and

9    must be remedied.  Id. at 9.  To support this argument, Plaintiff

10   relies heavily on the following footnote and studies contained

11   therein: "In 2018, 34% of new board hires across the country were

12   women. In the first half of 2019, that number rose to 45%.  See,

13   e.g., U.S. Board Diversity Trends in 2019, Harvard Law School

14   Forum on Corporate Governance, https://corpgov.law.harvard.edu/

15   2019/06/18/u-s-board-diversity-trendsin-2019/; Equilar Q3 2018

16   Gender Diversity Index, https://www.equilar.com/reports/61-

17   equilarq3-2018-gender-diversity-index.html.  And as of September

18   2019, women had increased their representation on corporate

19   boards for 7 straight quarters in a row. See Equilar Q2 2019

20   Gender Diversity Index, https://www.equilar.com/reports/67-q2-

21   2019-equilar-gender-diversityindex.html."  Id. at 1, n.1.  But as

22   Defendant points out, the Harvard published analysis and the 2019

23   Q2 Equilar report reflect data regarding women who secured their

24   directorships in 2019, after SB 826 was enacted, and the data

25   concern new hires only, rather than overall board composition.

26   Opp'n at 16, n.6.  By contrast, Equilar's 2018 Q3 report, which

27   reflects data from July to September 2018 - that is, the data

28   immediately prior to SB 826's enactment on September 30, 2018 -

10

1   shows only a .3 percent increase in the percentage of women on

2   Russell 3000 boards; and Equilar's 2019 Q2 report shows less than

3   two years of growth in the percentage of women on Russell 3000

4   boards, thereby rendering it of limited value because director

5   elections typically occur annually.  Id.  At oral argument,

6   Plaintiff conceded these facts.  Hrg. Trans. at 27-28.  Because

7   these additional facts water down the statistics Plaintiff relies

8   on so heavily, the Court finds they do little to advance his

9   challenge to the legislature's evidentiary basis for its

10  discrimination determination.

11      To the contrary, the present record reflects an abundance of

12  evidence supporting the legislature's determination that

13  discrimination exists and thus the remedial purpose of SB 826.

14  See Opp'n at 3-6.  Thus, the Court finds Defendant has made the

15  requisite showing, namely that "[s]ome degree of discrimination

16  [] occurred in a particular field before a gender-specific remedy

17  may be instituted in the field."  Coral Constr. Co. v. King

18  County, 941 F.2d 910, 932 (9th Cir. 1991) (overruled on other

19  grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v.

20  Chambers, 941 F.3d 1195 (9th Cir. 2019)); see also Associated

21  Gen. Contractors, 813 F.2d at 940 (explaining a "gender-conscious

22  program" is only justified if "members of the gender benefitted

23  by the classification actually suffer a disadvantage").  The

24  "factual predicate for the [gender-conscious] program should be

25  evaluated based upon all evidence presented to the district court

26  whether such evidence was adduced before or after enactment of

27  the [program]."  Coral Constr. Co., 941 F.2d at 920.  Here,

28  Defendant has made such a showing, bringing forward legislative

11

1  history materials, statistical analyses, expert studies,

2  anecdotal evidence, and expert declarations.  See Opp'n at 3-6

3  (summarizing the evidence of sex discrimination).  This evidence

4  supports Defendant's contention that the "stark lack of women on

5  corporate boards is due to longstanding discrimination against

6  women in the selection of corporate director seats . . . and the

7  Legislature's purpose in enacting SB 826 is to remedy that

8  discrimination."  Id. at 16.

9      In response to the evidence Defendant brought forward in

10  opposition including numerous expert declarations, Plaintiff does

11  not offer any experts or other rebuttal evidence of his own.  See

12  generally Reply.  Instead, Plaintiff merely attempts to poke

13  holes in some of Defendant's expert declarations and studies.

14  Id. at 6-9.  This is insufficient to undermine Defendant's ample

15  evidence of discrimination.  The present record before this Court

16  therefore supports Defendant's first justification for SB 826 of

17  remedying past discrimination.

18      Along with remedying past discrimination, Defendant offers a

19  second justification for SB 826: advancing diversity on public

20  boards.  Opp'n at 16-19.  Specifically, Defendant contends SB 826

21  furthers an "important state interest in achieving economic

22  benefits and [the] State's long-term economic wellbeing advanced

23  by gender diverse corporate boards."  Id. at 16.  To support this

24  contention, Defendant cites to Grutter v. Bollinger, 539 U.S. 306

25  (2003), and Williams-Yulee v. Fla. Bar, 575 U.S. 433 (2015),

26  arguing that those cases reflect the Supreme Court's recognition

27  of "diversity and the benefits it brings" as an important and

28  indeed "compelling" government interest.  Id. at 17.  Publicly

12

1   held corporations, according to Defendant, are analogous to the

2   institutions of higher education addressed in Grutter and the

3   judiciary addressed in Williams-Yulee, for which the Supreme

4   Court found an interest in diversity compelling because: "like

5   those institutions, publicly held corporations hold a special

6   position of influence within our society, are foundational for

7   the long-term success and functioning of our society, and are

8   entities created through statute." Id. (citing to Grutter, 539

9   U.S. at 328-333, and Williams-Yulee, 574 U.S. at 445-446).  But

10  as Plaintiff points out, Defendant is asking the Court to extend

11  Grutter and Williams-Yulee far beyond their facts and to

12  recognize the diversity rationale in a novel context.  Reply at

13  2-3.

14       The Court declines to extend the diversity rationale for the

15  first time to corporate boards for two principal reasons.  First,

16  a close reading of those cases does not support such an

17  extension.  For instance, in recognizing the diversity rationale,

18  the Grutter Court noted it "defer[red] to the Law School's

19  educational judgment that such diversity [was] essential to its

20  educational mission" and held that the Law School had "a

21  compelling interest in attaining a diverse student body."  539

22  U.S. at 328.  Thus, as this Court reads Grutter, the Supreme

23  Court's recognition of the diversity rationale turned upon the

24  special context of higher education.  See id. at 328-334.  Second

25  and relatedly, since Grutter, the Supreme Court has declined to

26  extend the diversity rationale to other contexts, even highly

27  similar ones.  See e.g. Parents Involved in Community Schools v.

28  Seattle School Dist. No. 1, 551 U.S. 701, 724-25 (2007).  In

13

1   Parents Involved, for example, the Supreme Court declined to

2   extend the diversity rationale to K-12 education, reasoning that

3   Grutter "relied upon considerations unique to institutions of

4   higher education" and the "special niche" universities occupy "in

5   our constitutional tradition."  551 U.S. at 724 (internal

6   citation omitted).  Given the Supreme Court's reluctance to

7   extend the diversity rationale even to other educational

8   settings, this Court also refuses to do so in a more dissimilar

9   context of corporate boards.

10       In the absence of any caselaw recognizing the diversity

11  rationale in this context and with all indications from the

12  Supreme Court pointing to the contrary, the Court does not find

13  Defendant's second justification for SB 826 is legally supported—

14  even it may be factually supported.  See Opp'n at 6-7

15  (summarizing the evidence of economic benefits and public

16  interests served by gender diversity).  However, as discussed

17  above, Defendant's first justification – remedying past

18  discrimination - is legally and factually supported.

19       Finding Defendant has established at least one important

20  government interest, the Court turns to the second prong of

21  intermediate scrutiny: whether SB 826 is substantially related to

22  the underlying objective of remedying past discrimination.  See

23  Associated Gen. Contractors, 713 F.3d at 1195.

24       Two Ninth Circuit cases are particularly instructive in how

25  to apply the "substantially related" standard here: Associated

26  Gen. Contractors, 813 F.2d 922, and Coral Constr. Co., 941 F.2d

27  ///

28  ///

14

910.[1]  Because they are among the only controlling caselaw

dealing specifically with equal protection challenges to gender-

based programs, these two cases merit discussion.

In Associated Gen. Contractors, plaintiff, a general

contractors' association, brought a facial challenge to a city

ordinance which gave preference to minority, women, and locally

owned businesses.  813 F.2d at 924.  Plaintiff argued, inter

alia, that the ordinance violated the Equal Protection Clause.

Id.  The district court upheld the ordinance, and the Ninth

Circuit affirmed as to the women-owned business preferences being

valid under the Equal Protection Clause.  Id. at 923, 941-942.

As relevant here, the Ninth Circuit discussed the ordinance's

treatment of the minority-owned businesses and women-owned

businesses separately, applying distinct standards of review.

Strict scrutiny applied to the ordinance's racial preferences for

minority-owned businesses, see id. at 928-939, while intermediate

scrutiny applied to the ordinance's gender preference for women-

owned businesses, see id. at 939-942.  In upholding the

ordinance's gender preference, the Ninth Circuit noted: "the

ordinance is unusual in the breadth of the subsidy it gives

women . . . the San Francisco ordinance gives women an advantage

in a large number of businesses and professions.  We have no

reason to believe that women are disadvantaged in each of the

many different industries covered by the ordinance."  Id. at 941.

---

[1] As noted at the hearing on Plaintiff's motion, these are the
only controlling Ninth Circuit precedent the parties and the
Court itself are aware of that specifically considered gender-
conscious programs, as opposed to race-conscious programs.  See
Hrg. Trans. at 21, 33.

15

1    In spite of its breadth, the Ninth Circuit upheld this gender

2    preference for women-owned businesses because: "While the city's

3    program may well be overinclusive, we believe it hews closely

4    enough to the city's goal of compensating women for disadvantages

5    they have suffered so as to survive a facial challenge.  Unlike

6    racial classifications, which must be 'narrowly' tailored to the

7    government's objective, there is no requirement that gender-based

8    statutes be 'drawn as precisely as [they] might have been' . . .

9    the WBE program is therefore <u>substantially</u> related to the city's

10   important goal of compensating women for the disparate treatment

11   they have suffered in the marketplace." <u>Id.</u> at 941-942 (internal

12   citations omitted) (emphasis in original).

13        Turning to <u>Coral Const. Co</u>, in that case the Ninth Circuit

14   again addressed an equal protection challenge to the validity of

15   a county's minority and women business enterprise set-aside

16   program.  941 F.2d 910.  The district court granted summary

17   judgment for the defendant-county upholding the set-aside

18   program.  <u>Id.</u> at 915. On appeal, the Ninth Circuit analyzed the

19   minority business set-aside separately from the women business

20   set-aside as it did in <u>Associated Gen. Contractors</u>, applying

21   strict scrutiny to the former, <u>see</u> 941 F.2d at 915-925, and

22   intermediate scrutiny to the latter, <u>see id.</u> at 928-933.  The

23   Ninth Circuit reversed as to the minority owned business program.

24   <u>Id.</u> at 926.  But relying on <u>Associated Gen. Contractors</u>, the

25   Ninth Circuit affirmed as to the women business set-aside,

26   finding the gender preference survived a facial challenge.  <u>Id.</u>

27   at 933.  As relevant here, the Ninth Circuit made clear: "unlike

28   the strict standard of review applied to race-conscious programs,

16

1   intermediate scrutiny does not require any showing of

2   governmental involvement, active or passive, in the

3   discrimination it seeks to remedy . . . the '[g]overnment has the

4   broad power to assure that physical differences between men and

5   women are not translated into permanent handicaps, and that they

6   do not serve as a subterfuge for those who would exclude women

7   from participating fully in our economic system.'"   Id. at 932

8   (internal citation omitted).  Further, the Court found that:

9   "Like San Francisco [in Associated Gen. Contractors], King County

10  has a legitimate and important interest in remedying the many

11  disadvantages that confront women business owners.  Moreover, the

12  means chosen are substantially related to the objective.  The

13  utilization goals under both the set-aside and preference methods

14  are legitimate means of furthering the objective, and are not

15  unduly onerous.  Similarly, while King County's program, like

16  that in San Francisco, gives preference to women in all

17  industries contracting with the County, this alone is

18  insufficient to warrant invalidating the entire program."   Id.

19      Here, similarly to the plaintiffs in Coral Const. Co. and

20  Associated Gen. Contractors, Plaintiff argues SB 826 is not

21  substantially related to its remedial purpose because (1) it is

22  arbitrary, rigid, and overbroad, and because (2) it lacks a

23  sunset provision.  Mot. at 10-12.  Beginning with arbitrariness,

24  Plaintiff challenges the state's chosen numerical requirements,

25  arguing the numbers were "seemingly picked at random."   Id. at

26  10.  But while this argument might carry the day for strict

27  scrutiny review, intermediate scrutiny is not so exacting.   See

28  Associated Gen. Contractors, 813 F.2d at 941-942 ("unlike racial

                              17

1   classifications, which must be 'narrowly' tailored to the

2   government's objective, there is no requirement that gender-based

3   statutes be 'drawn as precisely as [they] might have been.'")

4   Instead, the question is whether there is a "direct, substantial

5   relationship between the objective and the means chosen to

6   accomplish the objective." Coral Const. Co., 941 F.2d at 931

7   (internal citation omitted). Here, the state has provided

8   persuasive evidence that the numbers chosen are roughly in line

9   with empirical research supporting the idea that a critical mass

10  of women is required and that any number below risks creating a

11  token factor. Opp'n at 19-22; see also Hrg. Trans. at 37. That

12  is sufficient.

13       Next, as to rigidity, Plaintiff complains that SB 826 is a

14  quota that "assign[s] a preordained or outcome determinative

15  value to sex in all cases without exception." Mot. at 10.

16  Plaintiff further argues such quotas are per se unconstitutional.

17  Id.; see also Reply at 1-2. Defendant counters that it is not a

18  quota, but merely "minimum gender diversity requirements." Opp'n

19  at 1, 22. According to Defendant, the hallmark of a quota

20  program is a rigid mandate that allocates a fixed resource among

21  a defined pool of applicants, such as the contracting firms

22  participating in a bidding process in Richmond v. J.A. Croson

23  Co., 488 U.S. 469, 481 (1989) and in Monterey Mech., 125 F.3d at

24  704, or the students competing for limited seats in an incoming

25  class in Regents of Univ. of Cal. v. Bakke, 438 U.S. 265 (1978).

26  Opp'n at 22. By contrast, corporate board seats are not a fixed

27  resource because more board seats may be added and therefore

28  displacement of male directors is not an inevitable outcome;

18

1    hence, no quota.  Id.  In reply, Plaintiff doubles down on his

2    argument that SB 826 is a quota as defined in Grutter, 539 U.S.

3    at 335 ("Properly understood, a 'quota' is a program in which a

4    certain fixed number or proportion of opportunities are 'reserved

5    exclusively for certain . . . groups.'").  Reply at 1.  Further,

6    Plaintiff points out that Bakke itself involved a minimum seat

7    set aside rather than fixed percentages, and that when the school

8    argued the policy was not a quota because it merely set a floor,

9    Justice Powell ruled that such a "semantic distinction" was

10   "beside the point."  Id. at 1-2 (citing to 438 U.S. at 289).

11       Yet whether SB 826 is or is not a quota is not the

12   dispositive issue; even if it were a quota, no case brought

13   forward by Plaintiff supports a per se rule that gender quotas

14   are unconstitutional.  See Mot. at 10 (Collecting cases).

15   Plaintiff acknowledged as much at the hearing.  Hrg. Trans. at

16   33.  Instead, those cases dealt with racial quotas.  Id.  In the

17   absence of any controlling caselaw specific to gender quotas,

18   this Court declines to apply the rigid rule Plaintiff asks it to,

19   that gender quotas are per se unconstitutional.  The Court

20   instead follows Coral Const. Co and Associated Gen. Contractors

21   in applying intermediate scrutiny.  Under intermediate scrutiny,

22   the Court's proper focus is whether SB 826's minimum gender

23   diversity requirements substantially relate to its remedial

24   purpose.  As discussed above, Defendant has brought forward

25   significant evidence that it does.  See Opp'n at 19-22.  This is

26   sufficient at this early stage of the case.

27       In short, while SB 826's rigid numerical requirements might

28   be fatal under a strict scrutiny inquiry, they are not under

SER0058

1  intermediate scrutiny.  Plaintiff's second argument as to

2  rigidity thus fails.

3       Third, Plaintiff contends SB 826 is not substantially

4  related to its remedial purpose due its overbreadth.  Mot. at 11.

5  According to Plaintiff, SB 826 is overboard because "the

6  disparities vary wildly from corporation to corporation" yet SB

7  826 does not take into consideration variations across industry,

8  corporation size, or location.  Id.  The state, Plaintiff argues,

9  was required to take into account these variations and to provide

10 evidence of discrimination in the relevant field, defined

11 narrowly.  Id.  But the Ninth Circuit rejected precisely the same

12 argument in Associated Gen. Contractors and Coral Const. Co.  See

13 813 F.2d at 941-942 ("While the city's program may well be

14 overinclusive . . . there is no requirement that gender-based

15 statutes be 'drawn as precisely as [they] might have been'"); 941

16 F.2d at 932 ("while King County's program, like that in San

17 Francisco, gives preference to women in all industries

18 contracting with the County, this alone is insufficient to

19 warrant invalidating the entire program.")  In both of those

20 cases, the Ninth Circuit noted that the challenged laws were

21 overinclusive, but that overbreadth alone was insufficient to

22 find they facially violate the Equal Protection Clause.  Id.

23 Plaintiff's overbreadth argument likewise fails.

24      Lastly, Plaintiff argues SB 826 fails intermediate scrutiny

25 for lack of a sunset provision.  Mot. at 12.  But Plaintiff

26 fails to support this contention with any controlling caselaw.

27 Instead, Plaintiff cites to three non-binding out-of-circuit

28 cases.  Id. (citing to Ensley Branch, N.A.A.C.P. v. Seibels, 31

1    F.3d 1548, 1581 (11th Cir. 1994); Back v. Carter, 933 F. Supp.

2    738, 759 (N.D. Ind. 1196); Mallory v. Harkness, 895 F. Supp.

3    1556, 1562 (S.D. Fla. 1995)).  These cases do not persuade the

4    Court to hold that the lack of a sunset provision renders SB 826

5    unconstitutional as a matter of law.  Accordingly, Plaintiff's

6    final argument fails.  The Court thus finds SB 826 is

7    substantially related to its remedial goal and likely to survive

8    a facial challenge.

9        For the reasons detailed above, Plaintiff did not carry his

10   burden on the first Winter factor.

11                   b.   Remaining Winter Factors

12       Because Plaintiff has failed to demonstrate a likelihood of

13   success on the merits, the Court need not consider the remaining

14   elements.  See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th

15   Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff

16   has failed to show the likelihood of success on the merits, we

17   need not consider the remaining three Winter elements.").

18       The Court, however, briefly notes its reservations that a

19   preliminary injunction would serve the public interest.

20   Plaintiff argues it is always in the public interest to enjoin an

21   unconstitutional law.  Mot. at 13.  But for the reasons set forth

22   above, this law is not clearly unconstitutional.  On the other

23   side of the ledger, enjoining this law at this early stage may

24   deny highly qualified women who are eager and seeking to join

25   corporate boards the opportunities provided by SB 826.  The

26   legislature determined that the law was necessary because the

27   glass ceiling had been bolted shut with metal, shutting out

28   thousands of qualified women.  Hrg. Trans. at 51; Opp'n at 23.

21

1   The record before the Court today does not persuade the Court it

2   should override the legislature's determination and enjoin a law

3   that the evidence shows is clearly working.

4        That the law is working is underscored by the California

5   Women Lawyers' amicus brief.  See Amicus Brief, ECF No. 43.  As

6   the brief explains: "Governmental action such as SB 826 reduces

7   the negative effect of networks on female board membership by

8   forcing boards to look outside their networks to recruit female

9   directors.  And it is beginning to work.  Two years after SB

10  826's enactment, the early progress has been measurable,

11  significant, and has increased at a much faster pace since SB 826

12  was passed.  In 2016, just 208 corporate board seats were newly

13  filled by women; by about 2020 that number grew to 739; and, in

14  the first quarter of 2021, women filled 45% of public company

15  board appointments in California. Indeed, before the legislation,

16  29% of California companies that would have been subject to the

17  law "had all-male boards, [and] as of March 1, 2021, only 1.3%

18  . . . have all-male boards."  Id. at 15 (internal citations and

19  quotation marks omitted).  As such, enjoining a law that survives

20  intermediate scrutiny and that the legislature has determined is

21  necessary to effectuate much needed and long overdue cultural

22  change does not serve the public interest.

23                          IV.   ORDER

24       For the reasons set forth above, the Court DENIES

25  Plaintiff's motion for preliminary injunction.

26       IT IS SO ORDERED.

27  Dated: December 27, 2021

28

                                    22              JOHN A. MENDEZ,
                                                    UNITED STATES DISTRICT JUDGE